This is an appeal from a judgment in the Law Division which directed that the defendants permit the plaintiffs to examine the public records of the City of Cape May subject to reasonable restrictions for their safety and the avoidance of any interference with the transaction of the public affairs.
In February, 1948, the Board of Commissioners of the City of Cape May announced a proposed increase of $1.19 per $100.00 in the City's tax rate. Thereupon the plaintiff Taxpayers Association was formed with a membership of 750 out of the City's population of 2,583. The Association employed Mr. Brown, an auditor engaged in municipal research, and with the consent of the City arrangements were made for his examination of the municipal records. Mr. Brown engaged in his duties until he determined that non-technical assistance would be required in the listing of tax titles, the compilation of delinquent taxes, the copying of extracts from tax duplicates, and other work of similar nature. He then requested, but was denied, permission to use plaintiff Joseph E. Lockwood, Vice President of the Association and a citizen and taxpayer of Cape May, as a volunteer assistant to work under his supervision. Similarly, a request that plaintiff Harry A. Hargreaves, *Page 29 
a member of the Association experienced in the administration of municipal affairs, be permitted to assist him was not granted, the City taking the position that none of the members of the Association would be acceptable. Mr. Brown asserts that he has reached the point where it would be profitless for him to continue without the required assistance which could be "better done by local people familiar with local designations and references than it could be done by outsiders". The Association asserts that although its funds will be sufficient to pay Mr. Brown for completion of his work with the aid of Association volunteers, it is in no position to retain additional outside auditors, assuming they would accept the preferred task of doing the non-technical copying and other detail work.
On October 2, 1948, the plaintiffs Taxpayers Association of Cape May, New Jersey, Inc., Joseph E. Lockwood and Harry E. Hargreaves, filed a complaint in the Law Division against the defendants City of Cape May and Board of Commissioners of the City of Cape May, seeking an order directing the City to permit their inspection of "the public records of the defendant over such period of time as the Court may find reasonable and proper and subject to such restrictions as may be appropriate for the safeguarding of such records and the avoiding of interference with the transaction of current municipal business." The defendants filed their answer denying that plaintiffs had any right to inspect the public records of the City and cross motions for summary judgment were made by the plaintiffs and the defendants. At the argument before the trial judge the material facts were not disputed; the plaintiffs asserted a common law right to a general inspection of the City's "public records"; the defendants denied that such right ever existed and that if it did, R.S. 40:6-1 terminated it by implication; and the incidental issues were not pressed. The trial judge, after expressing the opinion that "there is no reason why a citizen, a taxpayer of a community should not be entitled to examine the public records", entered judgment for the plaintiffs and directed that inspection be permitted, subject to reasonable restrictions for the safeguarding of the records and the avoidance of interference with the conduct of the public *Page 30 
business. On the appeal the defendants acknowledge that the plaintiffs' claim for inspection has been confined to what may strictly be deemed "public records" (cf. R.S. 47:3-1) and that there has been no interference with the normal conduct of the public business or the safety of the records. They urge, however, that the plaintiffs have no right to a general inspection of the City's public records and that the lower court erred in granting it.
The common law right of an interested citizen and taxpayer to an inspection of public records has been discussed by our courts on several occasions. In the leading case of Ferry v. Williams,41 N.J.L. 332 (Sup. Ct. 1879), the court, after reviewing the English authorities and disavowing suggested limitations, sustained the right of a taxpayer to an inspection of applications for liquor licenses for the purpose of ascertaining whether they had been granted in accordance with law. The court expressly stated that the taxpayer's interest was sufficient even though he had none "except that common interest which every citizen has in the enforcement of the laws and ordinances of the community wherein he dwells". The Ferry case was applied inHiggins v. Lockwood, 74 N.J.L. 158 (Sup.Ct. 1906) where an application that citizens be permitted to inspect and copy registry lists was granted and in State ex rel. Fagan v. StateBoard of Assessors, 80 N.J.L. 516 (Sup.Ct. 1910) where an application to inspect railroad returns filed with the State Board of Assessors was likewise granted. See Lum v. McCarty,39 N.J.L. 287, 289 (E. A. 1877); Barber v. The West JerseyTitle and Guaranty Company, 53 N.J. Eq. 158 (E. A.
1895). In the Fagan case, Justice Garrison said:
"As a citizen and a taxpayer he has that abiding interest in the administration of his government and of every department of it that affects him or his fellows that marks the difference between a citizen and a subject. It is to the failure of the citizen to assert these rights that we must look for those evils that are incident to our form of government rather than to a superabundant zeal in this respect. It would be unfortunate in the extreme for the courts of a republic to erect technical barriers by which these duties of citizenship were discouraged or denied; and no more effectual barrier could be set up than the rule that records required by public law for the performance *Page 31 
of their public duties by public servants are possessed of a privacy into which the mere citizen, however patriotic his purpose, may not inquire."
But cf. Re Arnold, 160 Atl. 93 (Sup. Ct. 1932) not officially reported.
It is true, as the defendants contend, that in the Ferry,Higgins and Fagan cases the taxpayers did not seek general inspections but sought examination of particular records, namely, liquor licenses, registry lists, and railroad returns, in which they expressed an interest. That interest, however, was public rather than private and was held in common with other citizens and taxpayers. In the case before us, the interest although more comprehensive, is similar in nature and is likewise public and held in common with other citizens and taxpayers. In other jurisdictions recognizing the common law right of interested citizens and taxpayers to an examination of public records it has been applied to permit general inspections, subject to restrictions for safekeeping and non-interference with the public business. See State ex rel. Colescott v. King, 154 Ind. 621,57 N.E. 535 (1900); State ex rel. Wellford v. Williams,110 Tenn. 549, 75 S.W. 948 (1903); Nowack v. Fuller, 243 Mich. 200,219 N.W. 749 (1928); Clement v. Graham, 78 Vt. 290,63 Atl. 146 (1906). See also 2 McQuillin, MunicipalCorporations (2d Ed. 1939) Sec. 660.
Although we believe that in furtherance of good government the right of interested citizens and taxpayers to inspect public records should be broadly recognized, we need not here attempt to define its precise scope and limits. We are satisfied that under the special circumstances presented the interest of the taxpayers and citizens is sufficient to sustain their application. Their motives are good; they are vitally concerned with the threatened tax increase and are seeking information which may support demands for increased governmental efficiency and affirmative action for the elimination of any existing official abuses; they have incurred considerable expense and have completed a substantial part of their inspection; they will not endanger the safety of the records or interfere with the public business; and they will confine themselves *Page 32 
to an examination of documents which are admittedly public records. The public policy in favor of their position is strong and no counterbalancing considerations have been advanced by the defendants. Indeed, their sole contention is that recognition of a taxpayer's right to a general inspection might result in a flood of proceedings which will hamper the conduct of the public business. This, however, is readily met by the power of the trial judge to impose appropriate restrictions as was done here and, indeed, by his wide discretion to deny all relief either in the public interest [Beronio v. Pension Commission of Hoboken,130 N.J.L. 620, 624 (E. A. 1943)] or because of the plaintiff's bad motives [In Re Freeman, 75 N.J.L. 329 (Sup. Ct. 1907)] or for other just cause. See Pressman v. Elgin, 50 A.2d 360,169 A.L.R. 646 (Md. 1947) where Judge Delaplaine, speaking for the Maryland Court of Appeals, said:
"We realize that the right of a private citizen to inspect public records, while theoretically absolute, is in actual practice limited by the basic principle that mandamus is not demandable ex debite justitiae but is granted only in the sound discretion of the Court. In other words, the writ is not issued as of mere course, but will be granted only where the court is satisfied that it will serve some just or useful purpose.George's Creek Coal Iron Co. v. Allegany County Com'rs,59 Md. 255, 259; Lee v. Leitch, 131 Md. 30, 40, 101 A. 716. So, if a petitioner's purpose in desiring to see certain public records is merely to satisfy idle curiosity, the writ will not be granted."
The only remaining point requiring mention is the effect ofR.S. 40:6-1 which contains provision for municipal investigation upon court order pursuant to application by twenty-five freeholders. This act contemplates thorough-going investigation, including the appointment of official investigators, the subpoenaing of witnesses, and such other related steps as may be necessary to determine whether municipal funds have been unlawfully or corruptly expended. Although it set up "a quasi-judicial method" for ascertaining and publishing facts relating to the handling of such funds [see Township ofNorth Bergen v. Gough, 107 N.J.L. 424, 427 (Sup.Ct.
1931)] it contains nothing either in letter or in purpose which bears on the common law right of interested taxpayers to inspect public records which should be available for all to see. We have concluded *Page 33 
that it cannot properly be construed to have terminated such right of inspection in the plaintiffs.
The judgment below is affirmed.