The Honorable Nevin G. Smith Secretary Department of Administration The Carlton Building Tallahassee, Florida 32301
Dear Secretary Smith:
This is in response to your request for an opinion on substantially the following questions:
 (1) EXCEPT AS EXPRESSLY EXEMPTED BY THE PROVISIONS OF s 471.003, F.S. (1982 Supp.), ARE EMPLOYEES AND OFFICERS OF THE STATE WHO PERFORM SERVICES FOR THE STATE WHICH FALL WITHIN THE DEFINITION OF "ENGINEERING" CONTAINED IN s 471.005, F.S., REQUIRED TO BE LICENSED PURSUANT TO s 471.015, F.S.?
(2) IF THE ANSWER NO. 1 IS IN THE AFFIRMATIVE:
 (a) DOES THE TERM "OFFICER" AS USED IN 471.003(2)(b), F.S. (1982 Supp.), INCLUDE STATE EMPLOYEES?
 (b) DOES THE LANGUAGE OF s 471.003(2)(e), F.S. (1982 Supp.), EXTEND TO EMPLOYEES OF A STATE AGENCY WHO ARE SUPERVISED IN THE EXECUTION OF SUCH DUTIES BY A REGISTERED ENGINEER?
QUESTION ONE
Chapter 471, F.S., regulates the practice of engineering in the State of Florida. Section 471.001, F.S., sets forth the legislative determination that "if incompetent engineers performed engineering services, physical and economic injury to the citizens of the state would result and, therefore, [the Legislature] deems it necessary in the interest of public health and safety to regulate the practice of engineering in this state." Subsection (1) of s 471.003, F.S. (1982 Supp.), requires that "[n]o person other than a duly registered engineer shall practice engineering or use the name or title of `registered engineer' in this state." See also, s 471.031, F.S., prohibiting any "person" from practicing engineering unless the person is registered pursuant to Ch. 471 or employing unlicensed persons to practice engineering, and penalizing any violations of that section. Requirements for examination and licensure are contained in ss 471.013 and 471.015, F.S., respectively. The definition of "engineering" is contained in subsection (4) of s 471.005, F.S. You state, and it is assumed for purposes of this opinion, that certain classes of positions within the Career Service are or may be assigned duties which fall within the definition of "engineering" contained in subsection (4) of s 471.005.
The general rule regarding the application of a statute to the state and its public officers and employees is found at 82 C.J.S. Statutes s 317 (1953) where it is stated: "The government, whether federal or state, and its agencies are not ordinarily to be considered as within the purview of a statute, however general and comprehensive the language of act may be, unless intention to include them is clearly manifest, as where they are expressly named therein, or included by necessary implication." This source goes on to state, however, that "the rule with respect to the exclusion of the sovereign is less stringently applied where the operation of the law is on the agents or servants of the government rather than on the sovereign itself . . . ." Id. at page 556. The general rule is substantially the same in Florida. For example, regarding the application of the word "person" to governmental entities, see, Village of El Portal v. City of Miami Shores, 362 So.2d 275 (1981) (the term "persons" in a statute may mean and include municipal corporations, but such a meaning is subject to legislative intent as it is expressed or gathered from the purpose of the statute); City of St. Petersburg v. Carter,39 So.2d 804 (Fla. 1949). Compare, Rorich v. Board of Commissioners of Everglades Drainage District, 57 F.2d 1048 (N.D.Fla. 1932); State v. Peninsular Telegraph Co., 75 So. 201 (Fla. 1916). As to the legislative intent manifested in Ch. 471, F.S., regarding the law's applicability to state officers and employees, the Legislature appears to have included state employees within the statute's purview by necessary implication. Section 471.005(4)(a), F.S., defines "[e]ngineering" to mean certain services or creative works in certain fields, "any of which embraces such services or work, either public or private, in connection with any utilities, structures, buildings, machines, equipment, processes, work systems, projects, and industrial or consumer products or equipment of a mechanical, electrical, hydraulic, pneumatic, or thermal nature, insofar as they involve safeguarding life, health, or property, and including such other professional services as may be necessary to the planning, progress, and completion of any engineering services." Subsection (2)(b) of s 471.003, F.S. (1982 Supp.), as you are aware, exempts a "person acting as a public officer employed by any state, county, municipal, or other governmental unit of this state when working on any project the total estimated cost of which is $10,000 or less." The rule of statutory construction pertinent to this type of provision is that where a statute sets forth exceptions, no others may be implied to be intended. See, Williams v. American Surety Co. of New York,99 So.2d 877 (2 D.C.A.Fla., 1958); see also, Biddle v. State Beverage Department, 187 So.2d 65 (4 D.C.A.Fla. 1966) (under rule "expressio unius est exclusio alterius," exceptions made in a statute give rise to strong inference that no other exceptions were intended); Coe v. Broward County, 327 So.2d 69 (4 D.C.A.Fla., 1976), affirmed, 341 So.2d 762 (Fla. 1976) (exception or proviso in a statute is to be strictly construed); and see, 82 C.J.S. Statutes ss 316 and 333 (1953). Thus, the Legislature by excluding public officers for projects of $10,000 or less from the examination and licensing requirements of Ch. 471, F.S., as amended, has, in my opinion, impliedly included all public employees, whether state, county, or municipal, as well as public officers for projects greater than $10,000 in estimated costs, within the purview of Ch. 471. Moreover, as the provisions of s471.001 demonstrate, the performance of engineering services are regulated in the interest and for the protection of the public health, safety, and welfare, including that of the employees of the state, and persons utilizing or doing business on and with state owned or leased facilities and structures. Accord, AGO 50-235, May 10, 1950, Biennial Report of the Attorney General 1949-1950, p. 458, which concluded that "[t]he proper construction of county bridges, roads, highways and streets is connected with a public interest directly involving public safety and welfare so as to be within the purview and intent" of Ch. 471, and therefore, "any person performing the statutory duties of county engineer, i.e., `general supervision and control of all road work of the county,' comes within the intent and purpose of Chapter 471, Florida Statutes, and should be a registered professional engineer." That opinion also concludes that since the county engineer was an employee, rather than an officer, such engineer did not come within the exemption provided by former s 471.05(4), F.S. 1949 which exempted "[a] person acting as a public officer employed by the state, a county, or a municipality, or other governmental unit of this state, only on work where the total estimated cost of the same is two thousand dollars or less." T
QUESTION TWO
The first part of your second question regarding whether the term "officer" as used in s 471.003(2)(b), F.S. (1982 Supp.), includes state employees is answered in the negative. While no definition of "public officer" is contained in Ch. 471, F.S., as amended, the Legislature is presumed to know the meaning of the words it uses in statutes and the use of a particular word indicates the Legislature's intention to use that word as it is commonly and ordinarily used and defined. Thayer v. State, 335 So.2d 815
(Fla. 1976); State v. Tunnicliffe, 124 So. 279 (Fla. 1929); Florida State Racing Commission v. Bourquardez, 42 So.2d 87 (Fla. 1949); and see, Florida State Racing Commission v. McLaughlin,102 So.2d 574, at 575, (Fla. 1958), in which the Court quoted with approval the circuit court's opinion that "`[t]he Legislature is conclusively presumed to have a working knowledge of the English language and when a statute has been drafted in such manner as to clearly convey a specific meaning the only proper function of the Court is to effectuate this legislative intent.'" Further, the express mention of one thing implies the exclusion of all others, expressio unius est exclusio alterius. See, Devin v. City of Hollywood, 351 So.2d 1022 (Fla. 1976); Thayer v. State, supra; and see, Florida Legal Services v. State, 381 So.2d 1120 (1 D.C.A.Fla., 1979) (where the Legislature creates specific exceptions to the language in a statute, it can be inferred that had the Legislature intended to establish other exceptions it would have done so clearly and unequivocally).
Thus I am constrained to conclude that had the Legislature intended to exempt public employees, whether state, county, municipal, or other governmental unit of the state, it would have done so expressly. See, for example, subsection (2)(d) of s471.003, F.S. (1982 Supp.), exempting regular full-time employees of a public utility or other entity subject to regulation by the Florida Public Service Commission, Federal Energy Regulatory Commission, or Federal Communications Commission. Nor is there any statutory language to support the inference that the Legislature has impliedly intended to include state employees within the meaning of the term "public officers."
The second part of your second question is whether the exemption contained in subsection (2)(e) of s 471.003, F.S. (1982 Supp.), extends to employees of a state agency who are supervised in the execution of their duties by a registered engineer. Subsection (2)(e) provides an exemption from the registration and licensing requirements of Ch. 471 for "[e]mployees of a firm, corporation, or partnership who are the subordinates of a person in responsible charge, registered under ss. 471.001 — 471.039." (e.s.) It would seem to be beyond dispute that classified employees within the State Career Service are not employed by a "firm, corporation, or partnership." I apprehend that this exemption applies to the employees of the firms, corporations and partnerships and registrants designated in s 471.023, F.S., which provides for the certification of and certificates of authorization for such entities. However, the Board of Professional Engineers within the Department of Professional Regulation is vested with the enforcement of the provisions of Ch. 471, F.S., as amended, as well as the duty to report any criminal violation of Ch. 471 to the proper prosecuting authority for prompt prosecution, and you may contact that board concerning the application of this exemption to any particular employment position within the State Career Service System.
In summary, it is my opinion that except as expressly exempted by471.003, F.S. (1982 Supp.), employees and officers of the state who perform services for the state which fall within the definition of "engineering" contained in s 471.005(4) F.S., are required to be licensed pursuant to s 470.015, F.S.; the term "officer" as used in s 471.003(2)(b), F.S. (1982 Supp.), does not include state employees; and finally, the exemption provided in s471.003(2)(e), F.S. (1982 Supp.), for employees of a firm, corporation or partnership who are the subordinates of a person in responsible charge and registered under Ch. 471, F.S., does not apply or extend to classified employees within the State Career Service System.
Sincerely,
Jim Smith, Attorney General
Prepared by: Craig Willis, Assistant Attorney General